Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| WILMA PÉREZ ROSARIO<br>Recurrida<br><br>v.<br><br>HOUSING MANAGEMENT SERVICE S. EN C.<br>Peticionaria | TA2025CE00791 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2024CV07541<br><br>Sobre:<br>CAÍDA |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Juez Lotti Rodríguez

Grana Martínez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de enero de 2026.

La parte peticionaria compuesta por Housing Management Services y otros solicita que revisemos la denegatoria del Tribunal de Primera Instancia a dictar sentencia sumaria a su favor. Por su parte, la parte recurrida, Wilma Pérez Rosario, presentó su oposición al recurso. Los hechos procesales que anteceden a la presentación de este recurso son los siguientes.

**I**

La recurrida demandó por daños y perjuicios a la parte peticionaria y a otros demandados. La señora Pérez Rosario adujo que el 25 de agosto de 2023, sufrió una caída cuando su pierna izquierda cayó en el hueco de una alcantarilla frente al Condominio Ocean Park Tower donde reside. La recurrida atribuyó la caída y los daños sufridos al incumplimiento de la parte peticionaria con el deber de dar mantenimiento a la alcantarilla y a la falta de letreros o avisos para advertir su peligrosidad.[1]

---

[1] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC) ante el TPI, entrada número 1, Demanda.

La parte peticionaria reconoció la existencia del hueco en la alcantarilla, pero atribuyó la caída a la negligencia de la señora Pérez Rosario. Su representación legal presentó las defensas de asunción de riesgo y negligencia comparada.[2] Posteriormente presentó una moción de sentencia sumaria, basada en la deposición de la recurrida.[3] Según la peticionaria, la recurrida admitió que; (1) conoce la existencia de la alcantarilla, desde que vive en el edificio hace dos años, (2) normalmente cruza por la alcantarilla, (3) adyacente a la alcantarilla existe una acera peatonal que da acceso a la entrada peatonal del edificio, (4) caminó sobre la alcantarilla en vez de mantenerse en la acera peatonal porque era más cómodo, (5) la acera no estaba mojada ni la estaban limpiando al momento del accidente. Además, argumentó que, en las fotos admitidas como evidencia, puede verse que la alcantarilla no está diseñada para el tránsito peatonal.

La señora Pérez Rosario se opuso a la petición de la parte peticionaria y solicitó sentencia sumaria a su favor. Su representación legal adujo que el interrogatorio enviado a la peticionaria demostró que; (1) el acceso al condominio donde ocurrió el accidente no tenía un rótulo en el que se advirtiera que el paso de transeúntes estaba prohibido, (2) el lugar donde ocurrió el accidente es de libre acceso, porque no existen barreras o portones que impidan el paso de peatones, (3) el uso y costumbre de los residentes, visitantes y empleados es acceder al edificio por esa área, (4) la peticionaria daba mantenimiento esporádico a la alcantarilla para evitar que se tapara en caso de lluvia, (5) previo al accidente no se hizo ninguna labor de reparación en la alcantarilla y no existían protocolos, manuales de prevención de accidentes ni registros de

---

[2] Véase Contestación a Demanda, SUMAC ante TPI, entrada número 15.
[3] Véase Moción en Solicitud de Sentencia Sumaria, SUMAC ante TPI, entrada número 45.

mantenimiento de la parrilla. La recurrida presentó un video y fotos para demostrar que la parte peticionaria permitía a los empleados, residentes y visitantes el acceso por el área donde ocurrió el accidente.

El Tribunal de Primera Instancia (TPI) determinó entre los hechos incontrovertidos los siguientes. Housing Management Services administraba al Condominio Ocean Park para el 25 de agosto de 2023. Ocean Park Limited Partnership para esa fecha era la propietaria del condominio y continúa siéndolo. El 25 de agosto de 2023, la recurrida sufrió una caída al pisar una parrilla pluvial ubicada justo en la entrada y salida del Condominio Ocean Park Tower donde reside. La señora Perez Rosado comenzó a vivir en el Cond. Ocean Park Tower en marzo de 2023 y para el 25 de agosto de 2023, conocía la existencia de la alcantarilla. Cuando sale y entra del edificio, normalmente cruza por la alcantarilla. Una acera para el paso peatonal está adyacente a la alcantarilla. Dicha acera transcurre hacia el portón de entrada peatonal del edificio.[4]

Otros hechos determinados por el TPI son los siguientes. La recurrida decidió no utilizar la acera peatonal y caminar por encima de la parrilla de la alcantarilla. Según la recurrida, nada le impedía tomar la acera peatonal. Sin embargo, usualmente pasaba por el centro porque era más cómodo. La señora Pérez Rosado dijo que, para utilizar el paso peatonal, tenía que subir a la otra acera y caminar. El día que la recurrida sufrió la caída, la acera peatonal no estaba mojada y no estaban limpiándola. No obstante, el lugar del accidente no tenía un rótulo advirtiendo que la entrada y salida de transeúntes estaba prohibida. Actualmente tampoco tiene esa rotulación. La rejilla de desagüe donde la recurrida sufrió la caída, sirve de drenaje para las aguas en la entrada y salida frontal del

---

[4] Véase Resolución SUMAC, entrada número 71, determinaciones de hecho números 2, 4 y 9 a 11.

condominio y está localizada en el estacionamiento. El área donde ubica está cubierta por la póliza expedida por Universal.[5]

Por último, consta en la sentencia los hechos a continuación. La parte peticionaria daba mantenimiento esporádicamente a la parrilla para evitar que se tapara en caso de lluvias torrenciales. Previo al accidente; (1) el lugar donde ocurrió no había sido reparado y, (2) la parte recurrida no se había percatado que la parrilla tenía un hueco. Para la fecha del accidente; (1) no se mantenían normas o protocolos sobre prevención de accidentes que aplicaran al área donde ocurrió, (2) no existían normas y o protocolos sobre la prevención de accidentes que aplicaran a esa área y, (3) no existían manuales y o protocolos de mantenimiento para prevención de caídas en el Condominio, (4) la parrilla o rejilla donde se accidentó la recurrida no estaba fija. El edificio Ocean Park Tower ofrece viviendas exclusivamente a personas de 62 años o más, o a incapacitadas.[6]

El foro primario determinó que existe controversia sobre los hechos siguientes:

1.      Si el área de entrada y salida del edificio donde la demandante sufrió la caída tenía o no uso peatonal.
2.      Si existía una condición peligrosa en el área de la caída.
3.      Si los demandados tenían conocimiento o debieron tener conocimiento de la condición peligrosa y si hubo gestiones para corregirla.
4.      Si se tomaron medidas de precaución por los demandados.
5.      Sobre la extensión y cuantía de los daños físicos sufridos por la demandante.
6.      Sobre la existencia y valoración de los daños emocionales reclamados por la demandante.
7.      Sobre la existencia y cuantía de los daños económicos reclamados por la demandante.
8.      Sobre la aplicabilidad y extensión de la póliza de seguro emitida por Universal a los hechos del caso.
9.      Sobre la distribución o por ciento de negligencia entre la demandante y la demandada, si alguno.[7]

---

[5] Véase Resolución SUMAC, entrada número 71, determinaciones de hecho números 13, 17 a 20.
[6] Véase Resolución SUMAC, entrada número 71, determinaciones de hecho números determinaciones de hecho 22-23, 26- 30, 33.
[7] Véase Resolución SUMAC, entrada número 71, hechos en controversia.

Las fotos del lugar del accidente convencieron al tribunal de lo abierta y accesible que era el área de entrada y salida del edificio y de la estrechez de la parrilla de alcantarilla. El tribunal concluyó que esa situación podría crear una condición peligrosa o de riesgo para los transeúntes. Al TPI le quedó claro que existía controversia sobre las actuaciones y omisiones de las partes que pudieron ocasionar el accidente. No obstante, determinó que los hechos probados evidenciaron que hubo una negligencia comparada. El TPI entendió que la aplicación de esa doctrina requería analizar y considerar todos los hechos y circunstancias que mediaron en el caso y particularmente si existía una causa predominante. Según el TPI, la existencia de elementos de subjetividad y la necesidad de evaluar los grados de la posible negligencia de ambas partes ameritaban ser adjudicados en un juicio en su fondo. Por esa razón se negó a dictar sumaria y señaló juicio en su fondo.

Inconforme la parte peticionaria presentó este recurso en el que alega que:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REHUSAR APLICAR LAS DOCTRINAS DE NEGLIGENCIA COMPARADA Y ASUNCIÓN DE RIESGOS COMO CUESTIONES ESTRICTAMENTE JURÍDICAS, AUN CUANDO LOS HECHOS INCONTROVERTIDOS DEMUESTRAN QUE LA CONDUCTA DE LA DEMANDANTE AL CAMINAR VOLUNTARIAMENTE SOBRE LA PARRILLA, CON PLENO CONOCIMIENTO DEL RIESGO Y EXISTIENDO UNA ALTERNATIVA SEGURA PARA DISCURRIR ES LO QUE CONSTITUYE LA CAUSA ADECUADA DEL ALEGADO DAÑO.

ERRÓ EL TRIBUNAL EN SEÑALAR QUE EXISTE CONTROVERSIA SOBRE EL USO PEATONAL O NO DADO AL AREA DE ENTRADA Y SALIDA VEHICULAR DEL EDIFICIO DONDE LA DEMANDANTE SUFRIÓ LA CAÍDA.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SENTENCIA SUMARIA A LOS CODEMANDADOS, APLICANDO INCORRECTAMENTE EL ESTÁNDAR DE CONTROVERSIA REAL Y SUSTANCIAL DE LA REGLA 36.3 DE PROCEDIMIENTO CIVIL Y OBVIANDO QUE LA PARTE DEMANDANTE NO CONTROVIRTIÓ ADECUADAMENTE LOS HECHOS ESENCIALES PRESENTADOS.

## II

### EL *CERTIORARI*

El Tribunal Supremo de Puerto Rico estableció los criterios para la expedición de un certiorari en *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Nuestro máximo intérprete de la ley local definió el *certiorari* como un mecanismo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. La opinión ratifica los previamente expresado en *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeill Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2012); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020). La característica principal del *Certiorari* es la discreción que tiene el tribunal para atenderlo. La discreción ha sido definida reiteradamente como una forma de razonabilidad aplicada al discernimiento judicial. Su ejercicio persigue el objetivo de llegar a una conclusión justiciera. *Rivera et al. v. Arcos Dorados et al.,* supra pág. 210.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, establece los preceptos que rigen la discreción del Tribunal de Apelaciones para expedir un recurso de *Certiorari*. Según lo establecido en la Regla 52.1, *supra,* el recurso de Certiorari solamente será expedido:

....

[Para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la

apelación constituiría un fracaso irremediable de la justicia.

Al denegar la expedición de un recurso de *Certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

A fin de que el Tribunal de Apelaciones pueda ejercer su discreción prudentemente, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII, establece los criterios que debería considerar para determinar si procede la expedición de un auto de *Certiorari.* El texto de la regla citada es el siguiente.

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de Certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El permitir recurrir de diversas resoluciones no abona al desenvolvimiento lógico y funcional de los casos, porque interrumpe la marcha ordenada del proceso litigioso. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 730 (2016). La denegatoria a expedir

un auto de certiorari no constituye una adjudicación en los méritos. Por el contrario, es el ejercicio discrecional que hace el foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el tribunal de instancia. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

**III**

La peticionaria solicita que pasemos juicio sobre la denegatoria del Tribunal de Primera Instancia. La Regla 52.1, *supra,* nos autoriza a revisar la denegatoria a una moción de carácter dispositiva como la solicitud de sentencia sumaria. No obstante, en este momento colegimos que no existen los criterios que nos persuadan a intervenir con la determinación del foro recurrido, por lo que no intervendremos con la decisión del Tribunal de Primera Instancia.

**IV**

Por los fundamentos expresados, se deniega el recurso de *Certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones